O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MANUEL GALVAN, | ) Case No. |
| | ) SACV 12-2103 JGB (RNBx) |
| Plaintiff, | ) |
| v. | ) |
| CITY OF LA HABRA, A | ) |
| GOVERNMENTAL ENTITY; | ) **ORDER DENYING DEFENDANTS'** |
| OFFICER JASON SANCHEZ, AN | ) **MOTION FOR SUMMARY** |
| INDIVIDUAL; AND DOES 1 | ) **JUDGMENT** |
| THROUGH 10 INCLUSIVE | ) |
| | ) |
| Defendants. | ) |

Before the Court is a Motion for Summary Judgment
originally filed by Defendants City of La Habra and

1   Officer Jason Sanchez (collectively, "Defendants").[1]

2

3   ("Motion," Doc. No. 46.)  After considering the papers

4   timely filed in support of and in opposition to the

5   motions, and the arguments presented at the March 31,

6   2013 hearing, the Court DENIES the Motion.

7

8

9                    I.   BACKGROUND

10  A.  Procedural History

11

12      Plaintiff Manuel Galvan ("Galvan") filed his

13  Complaint against the Defendants on December 5, 2012.

14  (Doc. No. 1.)  On January 3, 2014, Galvan filed a First

15  Amended Complaint ("FAC") stating five claims for

16  relief: (1) deprivation of civil rights in violation of

17  42 U.S.C. § 1983 (Officer Sanchez); (2) deprivation of

18  civil rights in violation of 42 U.S.C. § 1983 (City of

19  La Habra); (3) deprivation of civil rights in violation

20  of 42 U.S.C. § 1983 (liability for deficiency pursuant

21

22

23

24

25  ─────────────────
    [1] Galvan settled his claims with the City of La
26  Habra after the filing of the Motion for Summary
    Judgment; Officer Sanchez is the only remaining
27  defendant.  (See Doc. No. 61.)

28

                              2

to California Government Code § 815.2(a));[2] (4) battery

by a police officer (all defendants); and (5)

intentional infliction of emotional distress (all

defendants).

On March 1, 2014, Defendant Officer Jason Sanchez

("Sanchez") filed the instant motion for summary

judgment.  Sanchez appears to seek summary judgment on

all claims, but only specifically addresses the § 1983

claims and the battery claim.  In support of the

Motion, Sanchez filed the following documents:

- Memorandum of Points and Authorities (Doc. No. 46-1);

- Statement of Uncontroverted Facts ("SUF," Doc. No. 46-2);

---

[2] California Government Code section 815.2(a) states "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2.

- Request for Judicial Notice ("RJN," Doc. No. 46-3) attaching Exhibits A-C (Doc. Nos. 46-3 to 46-6);

- Declaration of Kevin M. Osterberg ("Osterberg Decl.," Doc. No. 46-7) attaching Exhibits A-E, I (Doc. Nos. 46-8 to 46-12, 46-16, 46-18);

- Manually filed versions of Osterberg Decl. Exhibits F-H, J-K (see Doc. Nos. 47, 65-69).

On March 10, 2014, Galvan filed an Opposition to the Motion. ("Opp'n," Doc. Nos. 50, 59[3].) In support of the Opposition, Galvan filed the following documents:

- Statement of Genuine Disputes ("SGD," Doc. No. 51), which also includes a statement of additional facts;[4]

---

[3] Document Number 59 contains a table of contents and table of authorities that were mistakenly omitted from the Opposition.
[4] The filing of an opposing set of disputed facts is provided for in the Court's Standing Order. That Order states "If the party opposing the summary judgment motion wishes to include its own set of undisputed facts, it may include them in a second table (continued . . .)

4

- Declaration of Ryan D. Saba ("Saba Decl.," Doc. No. 52) attaching Exhibits A-B, I (Doc. Nos. 52-1 to 52-2, 52-9);

- Manually filed versions of Saba Decl. Exhibits C-H, J-K (see Doc. Nos. 57, 60);

- Objection to Defendants' Request for Judicial Notice ("RJN Obj.," Doc. No. 53);

- Objection to Declaration of Kevin M. Osterberg (Doc. Nos. 54, 56, 58[5]);

- Objection to the Declaration of Eric Leclercq (Doc. No. 55).

On March 17, 2014, Sanchez filed a Reply. (Doc. No. 62.)  In support of the Reply, Sanchez filed the following documents:

_____

( . . . continued)
at the end of its statement of genuine disputes of material fact."  (Standing Order at 8.)
    [5]  Document Number 54 purported to be the Declaration of Kevin M. Osterberg but was instead the Declaration of Eric Leclercq.  Document Numbers 56 and 58 correct that mistake.

- Evidentiary Objections  ("Sanchez Evidentiary Objections," Doc. No. 62-1)[6];

- Supplemental Request for Judicial Notice ("SRJN," Doc. No. 62-2);

- A Notice of Errata, attaching signature pages for Exhibits D-F, as well as page 130 of Exhibit D (Doc. No. 63).

**B.   Brief Factual Summary**

On August 25, 2011, Galvan traveled to Linda Galvan's house.  (FAC, ¶ 14.)  Galvan and Linda[7] were married but separated at the time, and the California Superior Court had previously issued a restraining order requiring Galvan to be at least 100 yards away

---

[6] Sanchez did not file a proper response to the additional facts in the SGD.  Rather than stating whether any of the additional facts contained in Galvan's SGD are disputed or undisputed, Sanchez has only filed evidentiary objections to those facts.  As stated in the Court's Standing Order, Sanchez's failure to dispute any of Galvan's additional facts deem all of Galvan's facts as undisputed for purposes of the Motion, to the extent they are admissible.  (See Standing Order at 7 (citing Fed. R. Civ. P. 56(e)(2); L.R. 56-3).)

[7] As Manuel Galvan and Linda Galvan share the same last name, the Court refers to Linda by her first name. No disrespect is intended.

from Linda at all times.  (Id.)  Linda called the police, and Sanchez responded to the call.  (FAC, ¶¶ 15-16.)  Galvan alleges that although he did not have a weapon and was in the "surrender position," with his hands in the air, Sanchez shot him three times.  (FAC, ¶¶ 16-18.)

**C.   Requests for Judicial Notice**

Along with the Motion, Sanchez also filed a Request for Judicial Notice, as well as a Supplemental Request for Judicial Notice.  In the RJN, Sanchez requests the Court to take judicial notice of:

- A Temporary Restraining Order from the Superior Court of the State of California, County of Orange, in the matter of Linda Ann Galvan v. Manuel Galvan, Case Number 11V001865, dated August 8, 2011 (RJN Exhibit A);

- A Domestic Violence Guilty Plea Form, signed by Manuel Galvan under the penalty of perjury from the Superior Court of the State of California,

County of Orange, in the matter of <u>People v. Galvan</u>, Case Number 11NM15870, dated January 14, 2013 (RJN Exhibit B);

- Minutes of January 14, 2014, from the Superior Court of the State of California, County of Orange, in the matter of <u>People v. Galvan</u>, Case Number 11NM15870 (RJN Exhibit C).

In the SRJN, Sanchez requests the Court to take judicial notice of:

- The Orange County District Attorney's internal investigative report of the August 25, 2011 incident, dated June 28, 2013 (Osterberg Decl. Ex. K).

Sanchez requests that the Court take judicial notice of the documents in the RJN pursuant to Federal Rule of Evidence ("FRE") 201 as those documents are court records.  Pursuant to FRE 201, the Court "may judicially notice a fact that is not subject to

reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FRE 201(b)(2).  A court may take judicial notice of matters of public record.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)).  Matters of public record include state court records.  See Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002) (federal courts may take judicial notice of related state court documents), overruled on other grounds as recognized in Cross v. Sisto, 676 F.3d 1172 (9th Cir. 2012).

     Galvan has filed objections to Exhibits 2 and 3 of the RJN, arguing those exhibits are inadmissible pursuant to FRE 410.  (See RJN Obj. 2-3.)  There is a distinction between whether the Court may take judicial notice of a fact and whether that fact is admissible, however.  See, e.g., Integra Lifesciences I, Ltd. v.

<u>Merck KgaA</u>, No. 96-1307, 2000 WL 35717873, at *1 (S.D. Cal. Jan. 27, 2000) ("Before reaching questions of admissibility, the Court must first determine whether it should take judicial notice . . . ."); <u>In re James</u>, 300 B.R. 890, 896 (Bankr. W.D. Tex. 2003) ("Judicial notice, while it may cure authentication, does not cure any customary objections involved in the admissibility of evidence, such as relevance, prejudice, or hearsay."). Accordingly, the Court GRANTS judicial notice of the documents attached to the RJN, and addresses Galvan's objections to that evidence below.

With respect to the SRJN, however, the basis for judicial notice is less clear. Sanchez contends that "the facts contained in this document are not subject to reasonable dispute, and the facts contained therein are capable of accurate and ready determination by resorting to sources whose accuracy cannot be reasonably questioned." (SRJN at 2.) The Court disagrees with this assertion, to the extent Sanchez

claims the Court can take judicial notice of conclusions of law or determinations of fact made by the Orange County District Attorney's Office during its internal investigation.  The events of August 25, 2011, are at issue in this action and therefore the Court cannot conclude that the District Attorney's Office's conclusions are "not subject to reasonable dispute."  Accordingly, the Court DENIES Sanchez's request judicial notice of this document.

**D.  Evidentiary Objections**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. Proc. 56(e).  At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  See Fraser v. Goodale, 342 F.3d

1032, 1036 (9th Cir. 2003); <u>Block v. City of Los</u>
<u>Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001).

Sanchez objects to some of the facts stated in Galvan's SGD, on the basis that they are irrelevant and lack foundation.  (<u>See generally</u>, Sanchez Evidentiary Objections.)  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here.  <u>Burch v. Regents of</u> <u>Univ. of California</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); <u>see also</u> <u>George v. Morris</u>, 736 F.3d 829, 854 (9th Cir. 2013) ("Factual disputes that are irrelevant or unnecessary will not be counted.") (citation omitted).  Thus, the Court does not consider any objections on the grounds that the evidence lacks foundation, is misleading, vague, ambiguous, conclusory, speculative, conjecture, compound,

irrelevant, or argumentative.  These objections are challenges to the characterization of the evidence and are improper on a motion for summary judgment.

### 1.   Galvan's Objections

As discussed above, Galvan objects to the consideration of his nolo contendere plea pursuant to Federal Rule of Evidence 410.  That objection is discussed more fully later in this Order.

### a.   Hearsay Objections

Galvan also objects to various statements attributed to him by investigators from the Orange County District Attorney's Office.  (See Doc. No. 55.) The Court has not relied on any of the statements made in that interview in the resolution of the Motion, and therefore these objections are OVERRULED.

///

///

///

**2. Sanchez's Objections**

    **a. Misstates Testimony Objections**

Sanchez objects to numerous statements in the SGD arguing they misstate the deposition testimony of Galvan, Linda, and Sanchez. (Sanchez Evidentiary Objections ¶¶ 76-77, 84, 87-92, 96, 98, 102-105, 125, and 128.) Those objections are OVERRULED. As sated above, those objections go to the weight of the evidence, not the admissibility of the testimony. <u>See Elston v. Toma</u>, No. 01-1124, 2004 WL 1853119, *2 (D. Or. Aug. 17, 2004)("In any event, [plaintiff's] alleged mischaracterization of testimony would affect only the weight given to the testimony by the Court rather than the admissibility of the testimony.").

    **b. Character Evidence Objections**

In his Opposition to the Motion, Galvan contends that Sanchez is not credible, and cites to findings made leading to his discharge by the City of Commerce as evidence of this lack of credibility. (Opp'n at 9-

10.)  Sanchez objects to the consideration of this evidence as irrelevant and improper character evidence. (<u>See</u> Sanchez Evidentiary Objections ¶¶ 106-119.)  The Court has not relied on this evidence in the resolution of the Motion, but notes that, to the extent this evidence it relevant at all, it appears to be inadmissible character evidence under Federal Rule of Evidence 404(b).  Accordingly, the objection is OVERRULLED.  Sanchez may re-raise this objection at trial.

### c.  Expert Witness Objections

Finally, Sanchez objects to the elements of the SGD purporting to use expert testimony as evidence that Sanchez did not comply with proper officer training in his encounter with Galvan.  (<u>See</u> Sanchez Evidentiary Objections ¶¶ 120-126.)  The Court has not relied on this evidence in the resolution of the Motion. Accordingly, the Court OVERRULES this objection.

## II. LEGAL STANDARD[8]

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. This burden may be satisfied by either (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving party has failed to sufficiently establish an essential

_____

[8] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

element to the non-moving party's case.  Id. at 322-23.

Where the party moving for summary judgment does not

bear the burden of proof at trial, it may show that no

genuine issue of material fact exists by demonstrating

that "there is an absence of evidence to support the

non-moving party's case."  Id. at 325.

However, where the moving party bears the burden of

proof at trial, the moving party must present

compelling evidence in order to obtain summary judgment

in its favor.  United States v. One Residential

Property at 8110 E. Mohave, 229 F. Supp. 2d 1046, 1047

(S.D. Cal. 2002) (citing Torres Vargas v. Santiago

Cummings, 149 F.3d 29, 35 (1st Cir. 1998) ("The party

who has the burden of proof on a dispositive issue

cannot attain summary judgment unless the evidence that

he provides on that issue is conclusive.")).  Failure

to meet this burden results in denial of the motion and

the Court need not consider the non-moving party's

evidence.  One Residential Property at 8110 E. Mohave,

229 F. Supp. 2d at 1048.


     Once the moving party meets the requirements of

Rule 56, the burden shifts to the party resisting the

motion, who "must set forth specific facts showing that

there is a genuine issue for trial."  Anderson, 477

U.S. at 256.  The non-moving party does not meet this

burden by showing "some metaphysical doubt as to the

material facts."  Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Genuine

factual issues must exist that "can be resolved only by

a finder of fact because they may reasonably be

resolved in favor of either party."  Anderson, 477 U.S.

at 250.  When ruling on a summary judgment motion, the

Court must examine all the evidence in the light most

favorable to the non-moving party.  Celotex, 477 U.S.

at 325.  The Court cannot engage in credibility

determinations, weighing of evidence, or drawing of

legitimate inferences from the facts; these functions are for the jury.  <u>Anderson</u>, 477 U.S. at 255.

### III. FACTS

Both sides cite facts that are not relevant to resolution of the Motion.  To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision.

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the Motions.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").  Any

facts the Court finds disputed are clearly marked as such.

**A.   Linda and Manuel Galvan's Relationship, the Restraining Order, and Sanchez's Previous Contact with Linda Galvan**

On the date of the shooting, Linda and Manuel Galvan had been married for about sixteen years, but were separated.  (SUF ¶ 2.)  About a month before the shooting, Linda had a conversation with Officer Sanchez while he was on duty in her neighborhood.  (SUF ¶ 6.) Linda told Sanchez that she was concerned about Galvan's conduct because he was becoming angry and desperate, and that she was afraid of him and was concerned he would come to her residence while she was away at work.  (SUF ¶ 7.)  Linda asked Sanchez if he and the La Habra Police Department could provide additional patrols in her neighborhood due to Galvan's conduct.  (SUF ¶ 8.)

Later, a little over two weeks before the shooting, Linda obtained a temporary restraining order against Galvan, requiring him to stay 100 yards away from Linda and her children.  (SUF ¶¶ 3-5.)

**B.   The Events Leading Up to the Shooting**

On the evening of August 25, 2011, Linda arrived home with her two children.  (SUF ¶ 9.)  Sometime later, Galvan arrived and knocked on the door.  (SUF ¶ 6.)  Galvan and Linda had a dispute about an iTunes password through a screen door, and then Linda closed the door.  (SUF ¶¶ 12-14.)  Linda then heard the sound of a vehicle running outside, and saw Galvan sitting in his Honda Accord in front of the house.  (SUF ¶¶ 15-16.)  Linda left her residence, approached the Honda, and told Galvan that she would call the police if he refused to leave.  (SUF ¶¶ 17-18.)  When Galvan did not leave, Linda called the La Habra Police Department.[9]

---

[9] The factual recitation in the Opposition explains that initially Linda called 9-1-1, but hung up before she spoke to a dispatcher because she did not think the situation warranted emergency assistance.  She then
(continued . . .)

(SUF ¶ 18.)  Linda requested that an officer be dispatched to her residence because Galvan was there in violation of the restraining order.  (SUF ¶ 19.)

Shortly thereafter, the dispatcher called Linda back.  (SUF ¶ 21.)  Galvan then exited his car and approached her.  (SUF ¶ 20.)  While Linda was talking to the dispatcher, Galvan grabbed the telephone from her hand, briefly spoke with the dispatcher, and then threw the telephone on the ground, breaking it.  (SUF ¶ 22.)

After Galvan broke the phone, Galvan and his son Matthew had a verbal altercation outside, before Linda told Matthew to go back inside the house.  (SUF ¶¶ 23-24.)  Once Matthew returned to the house, Linda went to a neighbor's house located at Space #96.  (SUF ¶¶ 26-

_____

( . . . continued)
called the La Habra Police Department's "business line," before being called back by the 9-1-1 dispatcher because she had hung up without talking to a dispatcher.  The evidence cited in the SGD does not support these facts, but it is immaterial to the resolution of the Motion.

27.)  As Linda was knocking on the door at Space #96,

Galvan followed her and was yelling at her, which made

Linda concerned about Galvan's anger and

unpredictability.  (SUF ¶¶ 28-29.)  When no one

answered the door at Space #96, Linda walked back

toward Galvan's Honda.  (SUF ¶ 30.)  As she was walking

back, Officer Sanchez arrived on the scene.  (SUF ¶

31.)

## C.   Events Immediately After Officer Sanchez's Arrival

Officer Sanchez arrived at Linda's house around

10:36 p.m.  (SGD ¶ 80.)  Dispatch had informed Sanchez

that there was a family disturbance at the location and

that a restraining order had been violated.  (SUF ¶

32.)  Sanchez was also told that the suspect had

entered the residence, and the telephone line had been

disconnected.  (SUF ¶ 33.)  Sanchez knew this location

was where he had previously spoken with Linda about her

concerns about Galvan. (SUF ¶ 34.)

When Sanchez arrived in the neighborhood, he observed Galvan's Honda parked outside Linda's house. (SUF ¶ 36.)  The Honda had its headlights on, its break lights on, and the driver's side door open.  (Id.)  As he approached, Sanchez could hear loud screaming and arguing, including a woman's scream.  (SUF ¶¶ 37-38.)

Sanchez saw Linda walking away from the porch of her house, with Galvan following her.[10]  (SUF ¶ 39.) Sanchez parked his marked police vehicle behind Galvan's Honda and turned on his vehicle's spotlight. (SUF ¶ 41.)  After parking his vehicle, Sanchez exited the vehicle and identified himself as a police officer. (SUF ¶ 42.)

**1.  Sanchez's Account of the Shooting**

The parties dispute what happened next.  Sanchez claims he gave Galvan several commands to get away from Linda and to step away from the car.  (SUF ¶ 43.)

---

[10] As discussed below, this fact is disputed.

24

Instead of stepping away from the car, Galvan leaned his torso into the car. (SUF ¶ 44-45, 48.)  After Galvan reemerged from the cabin of the vehicle, Sanchez believed that Galvan was holding a small, automatic hand gun in his right hand. (SUF ¶ 53.)  Galvan then turned toward Sanchez, and Sanchez ordered him to "drop it" several times. (SUF ¶ 54.)  Instead of dropping the object in his hand, Galvan made animated arm and hand gestures, and yelled at Sanchez stating "What are you going to do, shoot me?" (SUF ¶ 55-56.)

Galvan then turned to his left and raised his right hand with the object in Linda's direction. (SUF ¶ 57.) Sanchez again told Galvan to drop the object in his right hand. (SUF ¶ 58.)  Believing that the object in his right hand could pose a threat to Linda, Sanchez shot once at Galvan. (SUF ¶ 59.)  Galvan then turned, with the object in his right hand pointed at Sanchez. (SUF ¶ 60.)  Believing that the object in his right hand could pose a threat, Sanchez fired twice more at

Galvan.  (SUF ¶ 61.)  Galvan was struck twice. (SUF ¶
62.)


2.   **Manuel Galvan and Linda Galvan's Account of the**
     **Shooting**

Galvan does not dispute the events leading up to
Sanchez's arrival, but as it relates to the events that
happened after Sanchez arrived, Galvan's account
departs from Sanchez's substantially.  Galvan contends
that he was not following Linda as she exited the
house, but rather was standing next to his car as
Sanchez rounded the corner of Linda's street.  (SGD ¶
84; Deposition of Manuel Galvan ("Galvan Dep."), Saba
Decl. Ex. A at 149:5-9.)  Galvan steadfastly maintains
that he never moved from his standing position next to
the open car door.  (Galvan Dep. 152:1-153:8.)  He also
disputes Sanchez's contention that he was ordered to
step away from the car at any time. (Galvan Dep.
213:13-15.)  Galvan further contests the number of
commands that Sanchez gave; according to Galvan he was

only ordered to "drop it" and "get your hands up," once
and was not given several commands. (Galvan Dep.
211:18-21.)  Galvan maintains that he never leaned into
the car, and that the object in his hand was a cell
phone.  (Galvan Dep. 226:23-227:9.)  Galvan told
Sanchez it was a cell phone.  (Galvan Dep. 162:4-8.)
Linda states that it was clear that Galvan was not
holding a gun and that the object in his hand was a
cell phone.  (Deposition of Linda Galvan ("Linda
Dep."), Saba Decl. Ex. B at 124:2-128:20.)  When
Sanchez told Galvan to "drop it," he tossed the cell
phone onto the roof of the car.  (Galvan Dep. 172:20-
174:17.)  After Galvan tossed the phone onto the roof
of the car, he turned back towards Sanchez. (Galvan
Dep. 172:23-174:17.)  At this point, Galvan had his
hands in the air in a "goal post fashion," when Sanchez
suddenly shot him.  (Galvan Dep 167:14-17, 171:5-12,
172:17-173:7, 175:9-176:3; Linda Dep. 218:2-15.)

Neither party disputes that Sanchez immediately called for backup and for emergency medical assistance. (SUF ¶ 63.)  Sanchez received emergency medical assistance and survived the shooting. (SGD ¶ 64.)

**D.   Galvan's Nolo Contendere Plea**

On January 14, 2013, Galvan pled nolo contendere to violating, inter alia, California Penal Code section 148(a), and signed a guilty plea form under penalty of perjury stating:

On 8/25/11 in Orange County, I was in violation

of a valid domestic violence no contact order

and went to the home of my wife.  I pushed her

and dissuaded her from reporting my crime by

taking the phone from her while she was

speaking to the 911 Operator and threw it on

the ground and broke it.  I delayed or

obstructed Officer Sanchez who was attempting

to discharge his duties as a police officer by

failing to follow his command.

(RJN Ex. B at 3.)

# IV. DISCUSSION

## A. **Heck** Bar

Sanchez's primary argument in the Motion is that Galvan's claims are barred by the rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994).  (Motion at 12-16.)  In Heck, the Supreme Court held:

> A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.
>
> Heck, 512 U.S. 477, 486-487 (1994).

Sanchez argues that <u>Heck</u> bars all of Galvan's claims because he pled nolo contendere and was convicted of violating, inter alia, California Penal Code section 148(a)(1) for his actions leading up to the shooting. (Motion at 12.) To support this conclusion, Sanchez seeks to admit into evidence the form confirming Galvan's nolo contendere plea, stating that he "delayed or obstructed Officer Sanchez" because he "fail[ed] to follow [Sanchez's] command" and as well as the court minutes noting the details of Galvan's plea. (RJN Ex. B at 3; Ex. C.)

Penal Code section 148(a)(1) states, in relevant part, that one "who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ," shall be guilty of a misdemeanor. Sanchez contends that in order for Galvan to prevail on his § 1983 claim, he must demonstrate that he did not resist, delay, or obstruct Sanchez in

the performance of his duties.  (Motion at 12.)  But

because Galvan admitted that he "delayed or obstructed"

him, Sanchez contends, Galvan's civil § 1983 action

would necessarily call into question the validity of

his criminal conviction, a conclusion rejected by Heck.

(Id.)

     Galvan makes two arguments attacking this

proposition.  First, Galvan argues the Court cannot

consider his plea of nolo contendere because evidence

of his plea must be excluded by FRE 410(a)(2).  (See

RJN Obj. at 2-3; Opp'n at 11.)  Secondly, Galvan argues

that Ninth Circuit and California authorities exist

holding that Heck does not per se bar all § 1983 claims

brought when the plaintiff has been found guilty of

violating California Penal Code section 148(a)(1).

(Opp'n at 11-17.)  The Court addresses each argument in

turn.

///

///

### 1.   Federal Rule of Evidence 410(a)(2)

Galvan contends FRE 410(a)(2) prevents Sanchez from using evidence of his plea of nolo contendere arising from the circumstances of the shooting in his § 1983 action.  (See RJN Obj. at 2-3.)  Sanchez has not responded to this objection in his Reply.  FRE 410 provides "[i]n a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea . . . : a nolo contendere plea." Fed. R. Evid. 410(a)(2) (paragraph breaks omitted).

A plea of nolo contendere "is a special creature under the law," and "is not an admission of factual guilt."  United States v. Nguyen, 465 F.3d 1128, 1130 (9th Cir. 2006) (citing North Carolina v. Alford, 400 U.S. 25, 36 (1970)).  Rather, "[i]t merely allows the defendant so pleading to waive a trial and to authorize the court to treat him as if he were guilty," and for these reasons, "the nolo plea does not bear the same indicia of reliability as a guilty plea when used as

evidence of underlying culpability."   <u>Id.</u> at 1131-32.

Thus, "[a] conviction resulting from a nolo contendere

plea under these circumstances is not by itself

sufficient evidence to prove a defendant committed the

underlying crime."   <u>Id.</u> at 1132.


    At the outset, the Court notes that Galvan's nolo

contendere plea does not affect the <u>Heck</u> analysis in

that the <u>Heck</u>-bar applies to guilty verdicts, guilty

pleas, and nolo contendere pleas alike.   <u>Nuño v. Cnty.</u>

<u>of San Bernardino</u>, 58 F. Supp. 2d 1127, 1135 (C.D. Cal.

1999)("[F]or purposes of the <u>Heck</u> analysis, a plea of

nolo contendere in a California criminal action has the

same effect as a guilty plea or jury verdict of

guilty.").   Galvan's objection is not that his plea of

nolo contendere makes <u>Heck</u> inapplicable to this case;

rather, he contends that FRE 410 makes the evidence of

his nolo contendere plea inadmissible in the resolution

of the Motion.

Situations in which parties invoke FRE 410 for a similar purpose as Galvan does here occur in at least two factual contexts.  In the first situation, a criminal defendant pleads nolo contendere to criminal charges and is then sued for damages caused during the course of criminal conduct.  It seems uncontroversial that the nolo contendere plea in that instance would not be admissible in the later civil case, as this is barred by the plain language of FRE 410 prohibiting evidence of a nolo contendere plea "against the defendant."  See Quigley v. Travelers Prop. Cas. Ins. Co., 630 F. Supp. 2d 1204, 1207 (E.D. Cal. 2009) (sustaining objection to admission of no contest plea in civil action where criminal defendant sued homeowner's insurance policy carrier for failure to defend civil action); Allstate Ins. Co. v. Daniken, No. 04-3047, 2006 WL 516814, at *2 (D. Or. Mar. 1, 2006) (insurance company seeking declaratory relief that it had no duty to defend under homeowner's insurance policy could not use nolo contendere plea "as an

admission [that the actions] forming the basis for the plea were, in fact, criminal.").

In the second context -- the situation the Court encounters here -- the criminal defendant brings a civil rights claim in connection with his or her arrest, after pleading nolo contendere in the underlying criminal action.  There appears to be a split of authority on the admissibility of the nolo contendere plea in this context.  The Sixth Circuit has held civil rights claims "do[] not present the kind of situation contemplated by Rule 410: the use of a nolo contendere plea against the pleader in a subsequent civil or criminal action in which he is the *defendant* . . . [a]ccordingly, use of the no-contest plea for estoppel purposes is not 'against the defendant' within the meaning of [FRE] 410."  <u>Walker v. Schaeffer</u>, 854 F.2d 138, 143 (6th Cir. 1988).  Other circuits have found that, while the nolo contendere plea is inadmissible under FRE 410, the sentence and conviction

remain admissible in a later civil action.   See Olsen
v. Correiro, 189 F.3d 52, 62 (1st Cir. 1999) (holding
that "there is no reason here to expand Rule 410 beyond
the scope of its plain language, which in relevant part
encompasses only nolo *pleas*[,]" and does not bar
admission of the sentence and conviction) (emphasis
added).[11]


The Third Circuit, however, has held that the
admission of a nolo contendere plea during trial in
which the plaintiff is alleging civil rights violations
in connection with his underlying criminal charge can
be contrary to FRE 410 and constitutes reversible
error.[12]   Sharif v. Picone, 740 F.3d 263, 270 (3d Cir.

_____

[11] The Court in Olsen specifically noted that it did
not rely on the Sixth Circuit's decision in Walker in
coming to that conclusion.   See Olsen, 189 F.3d at 62
n.12

[12] The Third Circuit declined to definitively hold
that FRE 410 stands as a bar to the admission of a nolo
plea in a civil rights case because the Appellees
conceded that the Appellant's excessive force claim was
not a collateral attack on his aggravated assault
conviction.   Sharif, 740 F.3d at 269 ("But we need not
decide whether Rule 410 stands as a bar to the
admission of a nolo plea when a defendant levels a
collateral attack on his prior conviction.   [¶]   We
need not decide that question because even Appellees
     (continued . . .)

36

2014) ("Given these considerations, we hold that Rule 410 barred the admission of Sharif's plea of nolo contendere.  [¶]  The admission of Sharif's plea of nolo contendere was not harmless error.").

Ninth Circuit decisions discussing FRE 410 have not squarely addressed this issue.  Many Ninth Circuit decisions analyzing FRE 410 discuss the use of nolo contendere pleas for purposes of impeachment, but that is not the situation the Court faces here.  See <u>Brewer v. City of Napa</u>, 210 F.3d 1093, 1095-96 (9th Cir. 2000) ("Rule 410 by its terms prohibits only evidence of *pleas* (including no contest pleas), insofar as pleas constitute statements or admissions.  Rule 609, by contrast, permits admission for impeachment purposes of evidence of *convictions.*"); <u>Mendoza v. Gates</u>, 19 F. App'x 514, 518 (9th Cir. 2001) ("There is an exception

_____

( . . . continued)
concede that Sharif's claim of excessive force does not amount to a collateral attack on his aggravated assault conviction.").

37

to [Rule 410], however, when the plea is admitted for the purposes of impeachment.").

Two district court cases within the Ninth Circuit support the proposition that a plea of nolo contendere may be admitted in a later civil trial.  In <u>Alatraqchi v. City & Cnty. of San Francisco</u>, No. 99-4569, 2001 WL 637429 (N.D. Cal. May 30, 2001), the plaintiff was arrested for threatening a police officer after a traffic stop.  <u>Alatraqchi</u>, 2001 WL 637429, at *1.  The plaintiff pled "no contest" to disturbing the peace, and the remaining charges against him, including the charge of threating a police officer, were dropped. <u>Id.</u>  Plaintiff later brought suit against the police officer and the city, arguing that he was falsely arrested and imprisoned.  <u>Id.</u>  The police officer moved for summary judgment, arguing that, should plaintiff succeed in his action alleged he was falsely imprisoned, such an outcome would necessarily render his conviction or sentence invalid, and would violate

1    *Heck*.  *Id.* at *2.  Furthermore, the court reasoned that

2    the officer "[did] not seek to use plaintiff's plea

3    against plaintiff as an admission or as evidence of

4    guilt.  Under *Heck*, plaintiff's 'no contest' plea is

5    significant merely by the fact of its existence, and by

6    the fact that it resulted in a criminal conviction."

7

8    *Id.*  Though the district court did not engage in a

9    detailed analysis of the applicability of Rule 410, the

10   implication of the court's decision in *Alatraqchi* is

11

12   that Rule 410 does not bar the admission of a "no

13   contest" plea in a later civil action.

14

15

16

17       This conclusion is supported by the decision in

18   *Nuño v. County Of San Bernardino*, 58 F. Supp. 2d 1127,

19   1129 (C.D. Cal. 1999).  There, the district court

20   sidestepped the issue of whether FRE 410 applied, and

21   concluded that, "for purposes of the *Heck* analysis, a

22   plea of nolo contendere in a California criminal action

23   has the same effect as a guilty plea or jury verdict of

24   guilty."  *Id.* at 1135.  In *Nuño*, the plaintiff argued

25

26

27

28

that California Penal Code section 1016(3) prevented the court from considering evidence of his nolo contendere plea, because section 1016(3) stated that "the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Id. Though the court in Nuño noted in a footnote that FRE 410 was similar to California Penal Code section 1016(3) (see id. at 1136 n.10), it disagreed with the proposition that a plea of nolo contendere required the court to deny the motion to dismiss. Instead, the court noted that, under Heck, "what is relevant about plaintiff's nolo pleas and the resulting sections 148 and 12025(a) convictions is the simple fact of their existence." Id. at 1136. To hold that a nolo contendere plea could not be considered, the Court reasoned, would violate Heck. Id.

In one of the only Ninth Circuit case fully discussing the use of a later nolo contendere plea, United States v. Nguyen, 465 F.3d 1128 (9th Cir. 2006), the court held that the distinction between the nolo contendere plea and the conviction secured by that plea are indistinguishable for purposes of FRE 410.  In Nguyen, the defendant lawfully immigrated to the United States, but then was convicted of misdemeanor drug possession.  Nguyen, 465 F.3d at 1129.  The United States was unable to remove Nguyen from the country because the United States did not have a repatriation agreement with his home country.  Id.  As a result, the United States released him from custody but imposed an order of supervision ordering him not to commit any crimes.  Id.  Two years later, Nguyen pled nolo contendere to two misdemeanors under Alaskan law.  Id.  The United States then charged Nguyen with failure to comply with the terms of his release under supervision.  Id.  The only evidence the United States proffered at trial were the two state court judgments reflecting the

nolo contendere pleas.  <u>Id.</u> at 1130.  Nguyen objected,

arguing the admission of the judgments violated FRE

410.  <u>Id.</u>  The district court overruled the objection

and ultimately upheld the jury's verdict convicting

Nguyen of willfully violating the order of supervision.

<u>Id.</u>

The Ninth Circuit, reversing the district court and

finding that the nolo contendere pleas were

inadmissible, stated that

> reading [FRE 410] to preclude admission of a
> *nolo contendere* plea but to permit admission of
> conviction based on that plea produces an
> illogical result.  Rule 410's exclusion of a
> *nolo contendere* plea would be meaningless if
> all it took to prove that the defendant
> committed the crime charged was a certified
> copy of the inevitable judgment of conviction
> resulting from the plea.  We hold that Rule 410
> prohibits the admission of *nolo contendere*

> pleas and the convictions resulting from them
> as proof that the pleader actually committed
> the underlying crimes charged.

Id. at 1131.

The Court interprets Nguyen as being in conflict with the First Circuit's decision in Olsen, which drew a distinction between the nolo contendere plea and the resulting conviction and sentence.  Still, Nguyen is distinguishable from the instant case.  The admission of the previous nolo contendere pleas was clearly being used "against the defendant" in Nguyen, ultimately leading to his conviction.

The weight of authority in this Circuit, however, supports the proposition that the use of a nolo contendere plea in a later civil action is permissible as it is not being used "against the defendant" within the meaning of FRE 410.  See Wetter v. City of Napa, No. 07-04583, 2008 WL 62274, at *3 (N.D. Cal. Jan. 4,

2008) ("[F]ederal law is clear.  Heck places definitive weight on the judgment of conviction.")  While it might be the case that other circuits and commentators[13] have recently come to a contrary conclusion about the admissibility of nolo contendere pleas in later civil rights actions, this Court declines to so hold at this time.[14]

Accordingly, the Court OVERRULES Galvan's objection to consideration of his nolo contendere plea.

2.   **Under Ninth Circuit and California Precedent, Galvan's Claims Are Not Necessarily Barred as a Matter of Law Under Heck**

Sanchez contends Galvan's admission that he "delayed or obstructed Officer Sanchez who was

---

[13] See Colin Miller, The Best Offense Is A Good Defense: Why Criminal Defendants' Nolo Contendere Pleas Should Be Inadmissible Against Them When They Become Civil Plaintiffs, 75 U. Cin. L. Rev. 725 (2006).

[14] At the hearing on the Motion, counsel for both parties agreed that Galvan admitted in his deposition that he delayed or obstructed Officer Sanchez, and those statements are admissible at trial.

attempting to discharge his duties as a police officer by failing to follow his command," is squarely in contradiction with Galvan's allegations in the FAC that he was in the "surrender position" at the time of the shooting and was shot for no reason.  (Motion at 13-14.)  Furthermore, Sanchez argues that Galvan's complaint is tantamount to a claim of "actual innocence," and that because the shooting occurred as "one, single, continuous, rapidly evolving, and tense event," that cannot be sub-divided into discrete actions, Galvan's claims are barred by Heck.

     Galvan disagrees, and cites a trio of cases standing for the proposition that, although criminal defendant may have been convicted of violating California Penal Code section 148(a), Heck does not necessarily preclude a later civil rights action arising from those same circumstances.

In <u>Smith v. City of Hemet</u>, 394 F.3d 689 (9th Cir. 2005) (en banc), the Ninth Circuit explained why such a conclusion is proper.  In <u>Smith</u>, the police responded to a domestic violence call at the plaintiff's home. <u>Smith</u>, 394 F.3d at 693.  When the police arrived, the plaintiff was standing on the porch with his hands in his pockets.  <u>Id.</u>  He refused to remove his hands from his pockets, even after being instructed by the officers to do so on several occasions.  <u>Id.</u>  The officers then sprayed the plaintiff in the face with pepper spray, threw him down the porch, and ordered a police canine to attack him.  <u>Id.</u> at 694.  With officers surrounding him, he complied with the officers' orders and submitted to arrest.  <u>Id.</u>  Though he was compliant, the officers ordered the canine to attack him twice more, while pepper spraying him at least four times, even after he was pinned to the ground.  <u>Id.</u>  The plaintiff later pled guilty to violating California Penal Code section 148(a)(1).  <u>Id.</u>

The officers moved for summary judgment in the subsequent § 1983 action against them, arguing that the plaintiff's guilty plea to section 148(a)(1) barred his claims under <u>Heck</u>. <u>Id.</u> The district court granted summary judgment. <u>Id.</u> at 695.

The Ninth Circuit reversed, holding that an excessive force claim could survive the <u>Heck</u> bar in two scenarios. First, <u>Heck</u> did not bar a plaintiff's claims where the plaintiff's conduct violated the law, but the officers used excessive force in making the arrest. <u>Id.</u> at 696 ("[a] conviction based on conduct that occurred before the officers commence the process of arresting the defendant is not 'necessarily' rendered invalid by the officers' subsequent use of excessive force in making the arrest. For example, the officers do not act unlawfully when they perform investigative duties a defendant seeks to obstruct, but only afterwards when they employ excessive force in making the arrest."). Second, the plaintiff's conduct

may violate the law, and the officers use reasonable force in effecting the arrest, but use excessive force after the arrest.  Id. ("Similarly, excessive force used after a defendant has been arrested may properly be the subject of a § 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest that was itself lawfully conducted.") (citing Sanford v. Motts, 258 F.3d 1117, 1119–20 (9th Cir. 2001)).  In both of those situations, the Ninth Circuit held, unless it is clear from the record that a successful prosecution would necessarily imply the conviction was invalid, evidence of a successful prosecution itself does not necessarily bar the plaintiff's claims under Heck.  Id. at 699.

The California Supreme Court, in part responding to the Ninth Circuit's holding in Smith, clarified the state of California law in Yount v. City of Sacramento, 43 Cal. 4th 885, 900 (2008).  In Yount, the plaintiff was arrested for driving under the influence and placed

in the back of a patrol car.  <u>Yount</u>, 43 Cal. 4th at

890.  While inside the car he began to bang his head

and kick the side and window of the patrol vehicle.

<u>Id.</u>  An officer then took him out of the car, and

handcuffed him, as the plaintiff resisted.  <u>Id.</u>  After

being shot with a taser once while in the back seat,

the plaintiff kicked the window out of the patrol car.

<u>Id.</u>  As the officers attempted to immobilize the

plaintiff's legs, one officer mistakenly shot him with

his pistol, mistaking it for his taser.  <u>Id.</u> at 891.


    The California Supreme Court held that the Ninth

Circuit likely erred when it divided the analysis of

the actions in <u>Smith</u> into two phases.  <u>Id.</u> at 901.

Instead, the court held that a section 1983 claim could

be brought on similar facts, even if the resistance is

part of a "continuous transaction."  <u>Id.</u>


    Consistent with this view of the law, the court

held that "to the extent that Yount's § 1983 claim

alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ any force against him at the time he was shot, the claim is inconsistent with his conviction for resisting the officers and is barred under <u>Heck</u>."  <u>Id.</u> at 898.  On the other hand, the court said, "to the extent Yount's § 1983 claim alleges simply that Officer Shrum's use of deadly force was an unjustified and excessive response to Yount's resistance, the claim is not barred."  <u>Id</u>.

   The court found the following explanation illustrative

   For example, a defendant might resist a lawful
   arrest, to which the arresting officers might
   respond with excessive force to subdue him.
   The subsequent use of excessive force would not
   negate the lawfulness of the initial arrest
   attempt, or negate the unlawfulness of the
   criminal defendant's attempt to resist it.

Though occurring in one continuous chain of
events, two isolated factual contexts would
exist, the first giving rise to criminal
liability on the part of the criminal
defendant, and the second giving rise to civil
liability on the part of the arresting
officer."

Id. (quoting Jones v. Marcum, 197 F. Supp. 2d 991,
1005, n.9 (S.D. Ohio 2002)).


To apply the Heck bar in a situation like Yount's
the court added,

would imply that once a person resists law
enforcement, he has invited the police to
inflict any reaction or retribution they
choose, while forfeiting the right to sue for
damages.  Put another way, police subduing a
suspect could use as much force as they wanted—
and be shielded from accountability under civil

law—as long as the prosecutor could get the

plaintiff convicted on a charge of resisting.

<u>Id.</u> at 900 (quoting <u>VanGilder v. Baker</u>, 435 F.3d 689,

692 (7th Cir. 2006)).


Finally, Galvan cites <u>Hooper v. County of San

Diego</u>, 629 F.3d 1127, 1129 (9th Cir. 2011), as further

supporting his contention that his claims may be

maintained even in the face of <u>Heck</u>.  In <u>Hooper</u>, the

plaintiff was detained by a store security officer for

petty theft.  <u>Hooper</u>, 629 F.3d 1129.  When a police

officer arrived, he had a conversation with the

plaintiff and then told her he was going to search her

car.  <u>Id.</u>  Upon searching her car, he found a substance

that appeared to be methamphetamine.  <u>Id.</u>  The officer

returned and told the plaintiff she was under arrest.

<u>Id.</u>  A struggle ensued, and the officer called to his

police canine.  <u>Id.</u>  The dog bit the plaintiff's head

twice, causing disfiguring scars.  <u>Id.</u>

The plaintiff pled guilty to violating California Penal Code section 148(a)(1), and then brought a § 1983 claim against the officer for excessive force.   <u>Id.</u> Relying on the previous decisions in <u>Smith</u> and <u>Yount</u>, the Ninth Circuit reversed a grant of summary judgment in the officer's favor.   The Ninth Circuit, noting the <u>Yount</u> court's disapproval of <u>Smith's</u> dissection of events into two discrete phases, held that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under <u>Heck</u> when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" <u>Id.</u> at 1134.

The takeaway from these cases is twofold.   First, <u>Heck</u> does not necessarily bar excessive force claims where the civil rights plaintiff is convicted of violating California Penal Code section 148(a)(1). Second, the analysis of whether a civil rights plaintiff's claims survive a challenge to those claims

on Heck grounds can be based on "one continuous transaction," and do not require the Court to separate the arrest into discrete temporal phases in order to determine if claims are barred by Heck in this context.

Sanchez's argues that, despite holdings of Smith, Yount, and Hooper, Galvan's claims should still be barred by Heck.  (Motion at 15; Reply at 12.) Anticipating the argument that Galvan's claims should not be barred, Sanchez contended that the incident between Galvan and Sanchez "was clearly one single, continuous, rapidly evolving and tense event.  Galvan cannot be allowed to manufacture 'a break or separation in this one event' in order to attempt to retain his Section 1983 claim."  (Motion at 15.)

As explained by Galvan, however, he is not contending there was a "break" in the event or that he did not violate California Penal Code section 148(a)(1), and admits that he either delayed or

obstructed Sanchez because he did not immediately put the cell phone down.  (Opp'n at 13.)   What Galvan does contend is that it was unreasonable to use lethal force to effectuate his arrest for delaying or obstructing Sanchez. (Id.)

    Galvan's actions in failing to put the cell phone down, while violating California Penal Code section 148(a)(1), may not justify the use of excessive force in effecting the arrest – in this case, shooting Galvan three times.  See Rodriguez v. City of Modesto, No. 10-01370, 2013 WL 6415620, at *7 (E.D. Cal. Dec. 9, 2013) ("Plaintiff Fernandez admits she failed to comply with the officer's lawful order to "move back."  This "resist[ing], delay[ing], or obstruct[ing]" of the officer's lawful order does not lose its character as a violation of § 148(a)(1) if that officer (or another) used excessive force to arrest Plaintiff Fernandez for failing to comply with the order.").  The Court finds that, as in Hooper, this may have been a situation in

which the plaintiff's prior conviction is not called

into doubt by his later civil rights claims because

Sanchez arguably effectuated a lawful arrest in an

unlawful manner.  See Hooper, 629 F.3d at 1133 (quoting

Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir.

1997)).


    Accordingly, the Court finds that Galvan's claims

are not barred by Heck.

///

///

**B.   Excessive Force and the Graham Factors**

    Sanchez next argues that, even assuming that

Galvan's claims are not foreclosed by Heck, he is

entitled to summary judgment because the force he used,

i.e., shooting Galvan, was reasonable under the

circumstances.  (Motion at 16-19.)


    Under the Fourth Amendment, police may use only

such force as is objectively reasonable under the

circumstances. <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989); <u>Arpin v. Santa Clara Valley Trans. Agency</u>, 261 F.3d 912, 921 (9th Cir. 2001). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396; <u>Arpin</u>, 261 F.3d at 921. Determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." <u>Id.</u>

To determine whether a specific use of force was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." <u>Graham</u>, 490 U.S. at 396; <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 477

(9th Cir. 2007).  Relevant factors in this inquiry include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  "These factors, however, are not exclusive."  Bryan v. McPherson, 630 F.3d 805, 826 (9th Cir. 2009).  Another factor is the availability of alternative methods to effectuate an arrest or overcome resistance.  Smith, 394 F.3d at 701-02; Headwaters Forest Defense v. Cnty. of Humboldt, 240 F.3d 1185, 1204 (9th Cir. 2000), vacated on other grounds, 534 U.S. 801 (2001) ("[P]olice are required to consider what other tactics if any were available to effect the arrest.").  The most important of these factors is the threat posed by the suspect.  Smith, 394 F.3d at 702.  "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."  Bryant, 630 F.3d at 826.

The question of whether the force used to effect an arrest is reasonable "is ordinarily a question of fact for the jury." Liston v. Cnty. of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997).  A determination on the reasonableness of the use of force "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  "Police misconduct cases almost always turn on a jury's credibility determinations" and summary judgment in excessive force cases should be granted "sparingly." Id.  Officer Sanchez "can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Liston, 120 F.3d at 976 (9th Cir. 1997) (citing Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)).

In Galvan's version of events, he states that he was standing next to the open door with his cell phone in his hand; he was not following Linda out of the house.  Sanchez never told him to step away from the car.  Galvan never leaned into the car to retrieve anything.  Instead, he had his cell phone in his hand, and put his hands in the air.  After telling Sanchez that the object in his hand was a cell phone, Galvan dropped the phone onto the roof of the car and turned back towards Sanchez, with his hands in the air.  Sanchez then shot him.

There are genuine issues of material fact as to whether Sanchez's use of force was reasonable, because, if Galvan's version of events is to be believed, Sanchez used deadly force while Galvan had nothing in his hands and had his hands in the air.  Resolving all disputed facts in Galvan's favor, as the Court is bound to do on a motion for summary judgment, there are

triable issues as to whether Sanchez's use of force was
objectively reasonable.

Accordingly, the Court cannot grant summary
judgment on the grounds that the use of force by
Sanchez was reasonable under the circumstances.

**C   Qualified Immunity**

Sanchez finally argues that, even assuming that
Galvan's claims are not barred by Heck and summary
judgment is inappropriate on the excessive force claim,
he is entitled to qualified immunity.  (Motion at 16-
21.)  Galvan contends that Sanchez's use of force was
not reasonable under the circumstances and was a
violation of his clearly established constitutional
rights under the Fourth Amendment.  (Opp'n at 17-24.)

Under the doctrine of qualified immunity,
"government officials performing discretionary
functions generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). The qualified immunity doctrine protects defendants not just from ultimate liability, but from having to litigate at all. Saucier v. Katz, 533 U.S. 194, 200 (2001). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Id. (quoting Mitchell v. Forsyth, 472 U.S. 511 (1985)).

"A government official is entitled to qualified immunity from civil suit if, under the plaintiff's version of the facts, a reasonable official in the defendant's position could have believed that his conduct was lawful in light of clearly established law and the information the official possessed at the time the conduct occurred." Ross v. Ortiz, No. 10-1606, 2013 WL 3923487, at *10 (C.D. Cal. July 29, 2013). In

analyzing a claim of qualified immunity, a court must examine (1) whether the facts as alleged, taken in the light most favorable to plaintiff, show that the defendant's conduct violated a constitutional right, and (2) if a constitutional right was violated, whether, "in light of the specific context of the case," the constitutional right was so clearly established that a reasonable official would understand that what he or she was doing violated that right.  See Saucier, 533 U.S. at 201-02; see also Hope v. Pelzer, 536 U.S. 730, 739 (2002).  If no constitutional right was violated, the inquiry ends and the defendant prevails.  Saucier, 533 U.S. at 201.

    To meet the "clearly established" requirement, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  This requires defining the right allegedly violated in a

"particularized" sense that is "relevant" to the actual facts alleged.  Id.  "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

Courts are not required to address the two inquiries in any particular order.  Rather, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 243 (2009).

Sanchez contends he is entitled to qualified immunity because his actions were lawful and did not violate Galvan's constitutional rights.  (Motion at 19-21.)  Sanchez points to a number of facts in his accounting of events as evidence that his actions were

reasonable: (1) his previous discussions with Linda about Galvan's conduct; (2) hearing a woman screaming as he pulled up to Linda's house; (3) Galvan's failure to drop the object in his hand; and (4) Galvan's movement turning toward Linda and then again toward Sanchez with the unknown object in his hand.  (Motion at 21.)

But the Court is, again, bound to view the facts in the light most favorable to Galvan.  As discussed above, because questions of fact underlie the issues here and are material to the reasonableness of Sanchez's use of force against Galvan, Sanchez is not entitled to qualified immunity.  See Glenn v. Washington Cnty., 673 F.3d 864, 870 n.7 (9th Cir. 2011) (reversing grant of qualified immunity because genuine issues of material fact remain and "resolution of these issues is critical to a proper determination of the officers' entitlement to qualified immunity") (citing to Espinosa v. City & Cnty. of S.F., 598 F.3d 528, 532

(9th Cir. 2010) (affirming a denial of summary judgment on qualified immunity grounds because "there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights [which] are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions")); Santos, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom")).

## V. CONCLUSION

For the reasons stated above, the Court DENIES Sanchez's Motion for Summary Judgment.

Dated:  April 8, 2014

                              Jesus G. Bernal
                        United States District Judge